IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**RYAN SCOTT BURKE**,

              Plaintiff,                             Case No. 6:21-cv-852-MC

              v.                                OPINION AND ORDER

**OREGON DEPARTMENT OF CORRECTIONS**, and **STATE OF OREGON; DONALD GOLDEN; MICHAEL YODER; BRENT ERIKSEN; MARICA VENTURA; TANYA WELEBER; CRAIG PRINS; BRYAN SUNDQUIST; MELISSA NOFZIGER;** and **AARON POWERS**,

              Defendants.

_____

   **MCSHANE, Judge**:

       Plaintiff Ryan Scott Burke, an inmate at Oregon State Penitentiary (OSP), brings suit pursuant to 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. Pl.'s First Am. Compl. ¶ 1, ECF No. 16 ("FAC"). Plaintiff alleges that his First and Fourteenth Amendment rights were violated in connection to two disciplinary hearings at OSP. FAC ¶¶ 97, 104. Defendants move to dismiss the First Amendment retaliation claim. Defs.' Mot. 2, ECF No. 17. Defendants also move to dismiss Michael Yoder, Brent Eriksen, Marica Ventura, Tanya Weleber, Craig Prins, and Bryan Sundquist from the § 1983 due process claim. For the reasons discussed below, Defendants' Motion to Dismiss (ECF. No. 17) is GRANTED in part and DENIED in part.

1 – OPINION AND ORDER

## BACKGROUND[1]

Plaintiff has Stickler's syndrome, a genetic condition that causes "extreme vision and hearing impairment" as well as "deafness to particular audio tones." *Id.* ¶ 18. During the time at issue, Plaintiff's eyesight was also severely limited by myopia and cataracts. *Id.* ¶ 19.

Plaintiff appeared at a hearing on June 25, 2019, to address allegations of Compromising an Employee and Disrespect II. *Id.* ¶¶ 29–30. Prior to the hearing, Plaintiff's requests for a hearing aid or third-party assistance were denied. *Id.* ¶ 30. Plaintiff's requests for accommodations as the hearing commenced were again denied by Defendant Donald Golden, a hearings officer at OSP. *Id.* ¶ 31. Plaintiff attempted to read a prepared written statement during the course of the hearing, but he was shackled within a plexiglass box. *Id.* An OSP staff member attempted to assist by holding up the statement for Plaintiff to read, but Plaintiff was unable to do so because of his vision impairment. *Id.* Plaintiff alleges that these conditions prevented him from understanding or meaningfully participating in the hearing and resulted in his sentence of 90 days in segregation. *Id.* ¶ 33.

The hearing officer found against Plaintiff and Plaintiff was placed in disciplinary segregation. Plaintiff then sent kytes, grievances, and letters to Defendants Brent Eriksen, OSP ADA Coordinator, and Marica Ventura, statewide ADA Coordinator for inmates. *Id.* ¶¶ 6, 34. Plaintiff also sent written communications to then-Acting Inspector General, Defendant Melissa Nofziger, and placed more than 40 phone calls to the Inspector General Hotline. *Id.* ¶ 34.

Prior to leaving segregation, Plaintiff received a disciplinary report charging him with Drug Possession and Distribution I, triggering a second disciplinary hearing. *Id.* ¶¶ 37, 39. Plaintiff received this disciplinary report because, four months earlier, OSP had intercepted a package

---

[1] At the motion to dismiss stage, this Court takes all of Plaintiff's allegations as true. *See Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000).

addressed to Plaintiff that contained five strips of Suboxone. *Id*. ¶ 25. Plaintiff was not notified of the package when it was intercepted and did not learn of any investigation until he was questioned about it while in segregation. *Id*. ¶ 36. Before the second hearing, Plaintiff requested accommodations from Eriksen, including a hearing aid or assistance from a third party, but was denied. *Id*. ¶ 38. At the hearing, Plaintiff's requests for accommodation were again denied and, as a result, he had difficulty hearing Golden and was unable to read the disciplinary report that triggered the hearing. *Id*. ¶¶ 41–42. Golden found Plaintiff guilty and sentenced him to an additional 90 days in segregation. *Id*. ¶ 43. Nofziger eventually dismissed Plaintiff's charges of Drug Possession and Distribution I due to a lack of evidence, but after Plaintiff had already spent 31 days in segregation. *Id*. ¶ 44.

While in segregation and following his release, Plaintiff sent kytes to Nofziger, Ventura, Eriksen, and Golden, among others, explaining his predicament and the circumstances around the hearings. *Id*. ¶ 52. Plaintiff sent a kyte to Defendant Michael Yoder, Assistant Superintendent at OSP, explaining that his disability had kept him from meaningfully participating in the hearings and asking Yoder for assistance. *Id*. ¶ 54. About a week later, Plaintiff was called into the office of Defendant Bryan Sundquist, a Security Threat Management representative at OSP. *Id*. Sundquist showed Plaintiff a computer screen displaying Plaintiff's kyte to Yoder and proceeded to question Plaintiff "in a threatening tone" about sending kytes and grievances. *Id*. Shortly after this meeting with Sundquist, Plaintiff received Yoder's reply, which stated "[y]ou need to let this go and move on." *Id*. ¶ 55. Eriksen also warned Plaintiff that if he continued to "stir things up" by filing grievances and other communications, then he was going to "burn bridges." *Id*. ¶ 56. After Plaintiff had sent multiple communications to Nofziger, he was called into the office of Defendant Tanya Weleber, an OSP Behavioral Health Services case manager. There, he was warned that

Nofziger could have him confined to segregation for mental health reasons. *Id*. ¶ 57.

## STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

### I. § 1983 Violation of Due Process

Plaintiff alleges that Defendants Yoder, Eriksen, Ventura, Weleber, Prins, and Sundquist violated his Fourteenth Amendment right to due process. FAC ¶¶ 96–97. Specifically, Plaintiff alleges that Ericksen and Ventura "failed to provide Plaintiff with appropriate auxiliary aids," that Eriksen, Ventura, Nofziger, and Prins "ignored or denied Plaintff's requests for assistance," and that Yoder, Nofziger, and Prins "failed to properly investigate Plaintiff's claims of ADA violations and due process violations, and refused to properly overturn the wrongful [disciplinary reports] against Plaintiff." Pl.'s Compl. ¶ 97.

### A. Supervisor Liability

Defendants first argue that Yoder, Erikson, Ventura, Weleber, Prins, and Sundquist were not personally involved in any alleged constitutional deprivation and cannot be held liable under the theory of *respondeat superior*. Defs.' Mot. 5. Defendants are correct in asserting that courts do not apply the theory of *respondeat superior* when reviewing §1983 claims. *See Ashcroft*, 556 U.S. at 676. However, the Ninth Circuit recognizes supervisor liability for the following:

> (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a "reckless or callous indifference to the rights of others."

*Moss v. U.S. Secret Service*, 675 F.3d 1213, 1231 (9th Cir. 2012), *rev'd on other grounds sub nom. Wood v. Moss*, 572 U.S. 744 (2014). In other words, a supervisor may be found liable if there is "a sufficient causal connection between the supervisor's conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

Plaintiff alleges that Yoder violated Plaintiff's due process rights in a supervisory capacity because Yoder "failed to properly train and supervise subordinates as OSP Assistant Superintendent to ensure compliance with applicable laws and rules governing disciplinary actions and disability accommodations." Pl's Resp. 16–17. Plaintiff similarly alleges that Ventura violated his due process rights in a supervisory capacity by "failing to properly train and supervise facility ADA coordinators and failing to ensure proper compliance with ADA within ODOC facilities . . . ." Pl.'s Resp. 18. But Plaintiff fails to allege any facts demonstrating culpable action or inaction taken by Ventura or Yoder in regard to training and supervising subordinates. Indeed, Plaintiff's claim does not even state which subordinates Ventura and Yoder were responsible for training and supervising or how this alleged failure to train and supervise caused the alleged due process violation. Claims against Ventura an Yoder for failure to train and supervise are dismissed. To the extent Plaintiff's claims against Eriksen, Weleber, Prins, and

5 – OPINION AND ORDER

Sundquist are based upon a theory of supervisor liability, those claims are dismissed for similar reasons.

However, Plaintiff further alleges that Ventura violated his due process rights in a supervisory capacity because Ventura "refuse[ed] to assist Plaintiff when he indicated to her that he had received disciplinary action resulting from limitations imposed by his disability." *Id.* Plaintiff makes similar allegations regarding Yoder. Plaintiff sent kytes to Yoder, as the OSP Assistant Superintendent, and to Ventura, as the statewide ADA coordinator, explaining how his difficulties prevented him from meaningfully participating in the disciplinary hearings. Plaintiff argues that when Ventura did not intervene and Yoder told Plaintiff to let it go, they acquiesced in the constitutional deprivation by their subordinates. At this stage, Plaintiff has alleged sufficient facts for a claim of supervisor liability against Ventura and Yoder.

## B. Direct Liability

Plaintiff also alleges that Yoder, Eriksen, Ventura, Sundquist, Weleber, and Prins "directly participated in the deprivation of plaintiff's due process rights." Pl.'s Resp. 16–19. Defendants argue both that Plaintiff has failed to show a protected liberty interest and, in the alternative, that Plaintiff was provided with adequate procedural protections. Defs.' Reply 2–8.

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). The deprived interest must be a "recognized liberty or property interest." *Schroeder v. McDonald*, 55 F.3d 454, 462 (9th Cir. 1995). In a prison context, protected liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Notably, "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by

a court of law." *Id.* at 485.

The Ninth Circuit does not have a "single standard for determining whether a prison hardship is atypical and significant," but rather asks courts to look at factors on a "case by case, fact by fact consideration." *Serrano v. Francis*, 345 F.3d 1071, 1078 (quoting *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996). The Court considers "(1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence." *Id.*

On its own, disciplinary segregation, especially for periods of one month or less, is not generally considered an atypical or significant hardship for an inmate. *Sandin*, 515 U.S. at 486 ("[D]isciplinary segregation, with insignificant exceptions, mirror[s] those conditions imposed upon inmates in administrative segregation and protective custody."). However, an individual's own unique circumstances may make the conditions atypical and a significant hardship for them. *Cf. Serrano*, 345 F.3d at 1071 (finding that wheelchair-bound Serrano had "a protected liberty interest in his being free from confinement in a non-handicapped-accessible administrative housing unit"). And longer stays, especially without meaningful review, are more likely to implicate a protected liberty interest. *Cf. Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988 (9th Cir. 2014) ("[U]nder any plausible baseline, Brown's twenty-seven month confinement in the [Intensive Management Unit] without meaningful review 'impose[d] atypical and significant hardship on [him].'").

Plaintiff spent 121 days in solitary confinement, without phone calls or visits from family, and with no access to recreation and social activities. Pl.'s Resp. 19–21. Plaintiff also alleges that his confinement exacerbated the physical symptoms of his Stickler's Syndrome, because his orthotic shoes were confiscated and he was not provided a pillow for the first 60 days. Pl.'s Compl. ¶¶ 48, 49. Plaintiff

has alleged sufficient facts at this stage to suggest that his time in disciplinary segregation may implicate a protected liberty interest, such that he was entitled to procedural protections.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 33 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Plaintiff alleges that Eriksen personally denied a request for reasonable accommodations at the second disciplinary hearing. Pl.'s Compl. ¶ 38. Without a hearing aid or third-party assistance, Plaintiff was unable to meaningfully participate in the disciplinary hearing. For that reason, Plaintiff's due process claim against Eriksen is not dismissed.

Plaintiff's claims against Yoder, Ventura, Sundquist, Weleber, and Prins center around their alleged failure to investigate Plaintiff's grievances and their failure to overturn the disciplinary report. Here, the Court finds there was sufficient process, both formal and informal. Plaintiff sent numerous kytes and grievances. He called the Inspector General hotline. He sought administrative review by filing a petition with the Inspector General. Plaintiff's due process claim against Yoder, Ventura, Sundquist, Weleber, and Prins is dismissed.

## II. § 1983 First Amendment Retaliation

Plaintiff alleges that Defendants Golden, Yoder, Eriksen, Ventura, Weleber, Nofziger, Prins, and Sundquist violated Plaintiff's First Amendment rights by retaliating against him for engaging in protected activities, such as filing grievances and reporting misconduct. FAC ¶¶ 103–104.

An inmate claiming First Amendment retaliation must establish five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir. 2005). In determining whether speech has been chilled, a court must determine "whether

an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envtl. Ctr. v. Mendocino Cnty*, 192 F.3d 1283, 1301 (9th Cir. 1999) (quoting *Crawford–El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996), *vacated on other grounds*, 520 U.S. 1273 (1997) (internal quotation marks and citation omitted)). Thus, a plaintiff may perfect a claim of First Amendment retaliation by alleging that "his First Amendment rights were chilled, though not necessarily silenced." *Rhodes*, 408 F.3d at 569.

## A. Defendant Golden

Plaintiff alleges that Golden committed First Amendment retaliation when he "found Plaintiff guilty of Possession of Controlled Substance and Distribution absent any evidence of Plaintiff's guilt in retaliation for Plaintiff's kytes, grievances, and other communications . . . ." FAC ¶ 104. As a result of Golden's findings, Plaintiff spent 31 days in segregation before Nofziger dismissed Golden's findings for lack of evidence. *Id.* ¶ 44. Defendants argue that ODOC has authority to place inmates in segregation for misconduct while incarcerated under OAR 291-105-0066. Defs.' Mot. 6–7. Defendants are correct, but if the DR against Plaintiff was merely pretext and Golden sentenced Plaintiff to segregation absent evidence because of his protected communication through kytes and grievances—as Plaintiff's complaint alleges—then Golden's actions would constitute First Amendment retaliation. *See Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) (10 days in segregation and loss of television privileges for giving a TV interview was not an "atypical and significant hardship," but still constituted First Amendment retaliation). Dismissal is denied.

## B. Defendants Yoder, Nofziger, Prins, and Ventura

Plaintiff alleges that Yoder, Nofziger, and Prins committed First Amendment retaliation when they "repeatedly failed to properly investigate Plaintiff's claims of ADA violations, and refused to

overturn the wrongful DR against Plaintiff . . . ." FAC ¶ 104. Plaintiff further alleges that Yoder, Nofziger, Prins, and Ventura committed First Amendment retaliation when they "repeatedly ignored or denied Plaintiff's requests for assistance based on his denial of ADA accommodations and due process. . . ." *Id*. Even assuming that this alleged conduct rose to the level of adverse actions, Plaintiff has failed to allege any facts that show how this conduct would chill or silence a person of ordinary firmness from future First Amendment activities. For this reason, Plaintiff's First Amendment retaliation claims against Yoder, Nofziger, Prins, and Ventura are dismissed.

**C. Defendant Eriksen**

Plaintiff alleges that Eriksen committed First Amendment retaliation when he "repeatedly ignored or denied Plaintiff's requests for assistance based on his denial of ADA accommodations and due process. . . ." *Id*. Even assuming that this constituted an adverse action, Plaintiff has failed to allege any facts that show how this conduct would chill or silence a person of ordinary firmness from future First Amendment activities.

Plaintiff further alleges that Eriksen committed First Amendment retaliation by "deliberately engag[ing] in intimidation and retaliatory conduct." *Id*. Plaintiff points to an interaction when Eriksen warned Plaintiff that if he continued to "stir things up" by sending kytes and filing grievances, then he was going to "burn bridges," which Plaintiff believed was intended to have a chilling effect on his free speech. *Id*. ¶ 56. But whether Eriksen intended for his words to have a chilling effect is irrelevant. Because Plaintiff has failed to allege any facts to show conduct that would actually chill a person of ordinary firmness from future First Amendment activities, his retaliation claims against Eriksen are dismissed.

**G. Defendant Sundquist**

Plaintiff alleges that Sundquist committed First Amendment retaliation by "deliberately engag[ing] in intimidation and retaliatory conduct." *Id*. ¶ 104. Specifically, Plaintiff claims that Sundquist

called Plaintiff into his office, showed Plaintiff a kyte that Plaintiff had previously sent to Yoder, and then proceeded to question Plaintiff "in a threatening tone" about the grievances and kytes Plaintiff had sent. *Id.* ¶ 54. Although it is not clear whether Sundquist's conduct would chill a person of ordinary firmness from future First Amendment activity, Plaintiff has alleged facts that demonstrate more than just a possibility that Sundquist threatened Plaintiff because of his filing of kytes and grievances. Dismissal is denied.

**H. Defendant Weleber**

Plaintiff alleges that Sundquist committed First Amendment retaliation by "deliberately engag[ing] in intimidation and retaliatory conduct." *Id.* ¶ 104. Specifically, Plaintiff alleges that after he sent multiple communications to Nofziger, Weleber called Plaintiff into her office and warned him that "Nofziger could have Plaintiff confined to [segregation] for mental health reasons." *Id.* ¶ 57. These alleged facts demonstrate more than just a possibility that Weleber threatened Plaintiff because of his communications to Nofziger. Dismissal is denied.

<u>**CONCLUSION**</u>

Defendant's Motion to Dismiss, ECF No. 17, is GRANTED in part and DENIED in part, consistent with this opinion.

IT IS SO ORDERED.

DATED this 26th day of August, 2022.

_____/s Michael McShane_____
Michael J. McShane
United States District Judge
